**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |  |
|---|---|---|
| SVV TECHNOLOGY INNOVATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **Civil Action No. 6:22-cv-640-ADA** |
| | ) | |
| v. | ) | |
| | ) | |
| ACER INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S RULE 59 MOTION FOR A NEW TRIAL OR REMITTITUR**

# TABLE OF CONTENTS

I.  Introduction ........................................................................................................... 1

II. Legal Standard ...................................................................................................... 1

III. A New Trial, or at Least a Remittitur, On Damages Is Warranted ..................................... 2

    A.  The Damages Award Relies on an Improper Entire Market Value Analysis ......... 2

    B.  A New Trial or at Least Remittitur Is Also Required Because the Great Weight of the Evidence Does Not Support the Jury's $10 Million Award ........... 4

IV. The Jury's Validity Determination Goes Against the Great Weight of the Evidence ................................................................................................................ 7

V.  The Jury's Willfulness Determination Goes Against the Great Weight of the Evidence .............................................................................................................. 10

VI. The Jury's Statutory Infringement Determination Goes Against the Great Weight of the Evidence and Was Tainted by a Prejudicial Error ................................ 12

    A.  A Finding of Direct Infringement Based Upon Acer's Actions Is Against the Great Weight of the Evidence ........................................................................ 12

    B.  A Finding of Vicarious Liability for the Actions of Acer America Is Against the Great Weight of the Evidence ........................................................... 13

        1.  There is No Evidence Acer Directed or Controlled Acer America .......... 13

        2.  There Is No Evidence Showing Acer America Was Acer's Agent .......... 14

        3.  There Is No Evidence Showing Acer America Is Acer's Alter Ego......... 14

    C.  A Finding of Indirect Infringement Is Against the Great Weight of the Evidence.............................................................................................................. 17

VII. Conclusion ........................................................................................................... 18

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adasa Inc. v. Avery Dennison Corp.*,
   55 F.4th 900 (Fed. Cir. 2022) .................................................................................................8

*Bostic v. The Daily Dot, LLC*,
   No. 1:22-CV-158-RP, 2023 WL 2317789 (W.D. Tex. Mar. 1, 2023)...................................15

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
   447 F.3d 411 (5th Cir. 2006) ...............................................................................................15

*Gardemal v. Westin Hotel Co.*,
   186 F.3d 588 (5th Cir. 1999) ....................................................................................15, 16, 17

*In re Gleave*,
   560 F.3d 1331 (Fed. Cir. 2009)..............................................................................................8

*Hynix Semiconductors, Inc. v. Rambus, Inc.*,
   CV-00-20905-RMW, 2006 WL 1991760 (N.D. Cal. July 14, 2006) .......................................5

*KSR Intern. Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007)...............................................................................................................9

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012)..........................................................................................2, 3, 4

*LG Elecs., U.S.A., Inc. v. Whirlpool Corp.*,
   798 F. Supp. 2d 541 (D. Del. 2011)...................................................................................7, 10

*LoneStar Tech. Innovations, LLC v. ASUSTEK Comp. Inc.*,
   No. 6:19-cv-00059-RWS, 2022 WL 1498784 (E.D. Tex. Mar. 18, 2022) ..............................5

*Lucas v. Texas Indus., Inc.*,
   696 S.W.2d 372 (Tex. 1984).................................................................................................15

*Lucent Techs. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009).........................................................................................6, 7

*Provisur Techs., Inc. v. Weber, Inc.*,
   No. 2023-1438, 2024 WL 4363502 (Fed. Cir. Oct. 2, 2024)....................................3, 4, 10, 11

*QPSX Developments 5 Pty Ltd. v. Nortel Networks, Inc.*,
   No. 2:05-cv-00268, 2008 WL 728201 (E.D. Tex. Mar. 18, 2008) ..........................................5

*Quest Medical, Inc. v. Apprill*,
   90 F.3d 1080 (5th Cir. 1996) ............................................................................2

*Rite-Hite Corp. v. Kelley Co., Inc.*,
   56 F.3d 1538 (Fed. Cir. 1995).........................................................................3

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
   30 F.4th 1109 (Fed. Cir. 2022) .....................................................................17

*Seidman v. American Airlines, Inc.*,
   923 F.2d 1134 (5th Cir. 1991) ........................................................................5

*Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*,
   979 S.W.2d 730 (Tex. App. 1998) ................................................................15

*Smith v. Transworld Drilling Co.*,
   773 F.2d 610 (5th Cir. 1985) ..........................................................................1

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*,
   750 F.2d 1552 (Fed. Cir. 1984) ......................................................................5

*United States v. Bestfoods*,
   524 U.S. 51 (1998).......................................................................................15

*Wanton v. Wal-Mart Stores Texas, L.L.C.*,
   23 F.4th 422 (5th Cir. 2022) ..........................................................................2

*Wordtech Sys., Inc. v. Integrated Network Soln's, Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010)....................................................................15

*Z4 Technologies, Inc. v. Microsoft Corp.*,
   507 F.3d 1340 (Fed. Cir. 2007)....................................................................15

**Statutes**

35 U.S.C. § 271(a) ............................................................................................12

35 U.S.C. § 284.............................................................................................2, 4

**TABLE OF EXHIBITS**

| Number | Exhibit Description |
|--------|---------------------|
| 1 | Excerpts from the Trial Transcript (hereinafter, "Tr.") |
| 2 | PDX-4 – Plaintiff SVV's "Damages Demonstratives" |
| 3 | JTX-001 – January 22, 2021 letter from R. Katz to Acer America Corporation |
| 4 | JTX-002 – January 29, 2021 email from P. Yo to R. Katz |
| 5 | JTX-015 – Supply Agreement Between Acer Incorporated and Acer America Corporation |
| 6 | JTX-014 – Acer Incorporated 2022 Annual Report |
| 7 | DTX-017 – Kunimochi |
| 8 | DTX-018 – Kobayashi |
| 9 | DTX-014 – Coe-Sullivan |
| 10 | DTX-053 – Dubrow |

## I.     Introduction

A new trial is warranted here. The jury's damages award depends upon legally unsupported theories, invoking entire market value principles without establishing the patented invention drives demand for the monitor product. The award is also unsupported by the great weight of the evidence at trial, awarding a lump sum of $10 million based upon a flawed per-unit running royalty analysis.

As to validity, the jury heard no evidence showing that the asserted claims are valid. Indeed, SVV offered no rebuttal case. SVV did not cross examine Dr. Coleman (Acer's expert) with regard to validity on two of the four asserted patents. And the cross examination SVV did conduct for the remaining two patents misled the jury with irrelevant questions based on improper legal standards.

Finally, the great weight of the evidence does not establish that: (i) Acer directly infringed based upon its own activities, for Acer does not make, use, sell, offer for sale, or import the accused products; (ii) Acer is vicariously liable for the actions of Acer America (Acer's subsidiary), since Acer does not direct or control Acer America, nor is Acer America the agent or alter ego of Acer; (iii) Acer indirectly infringed, as it lacked specific intent to encourage another's infringement; and (iv) Acer willfully infringed, again because it lacked any specific intent.

A new trial is warranted for any of the above reasons. But at the very least, the Court should remit the damages award to no more than $767,000, the maximum supported by the trial evidence.

## II.     Legal Standard

Federal Rule of Civil Procedure 59 "confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985). A new trial may be granted if "the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Id.* at 613. A remittitur is also appropriate

if the "defects in the award are readily identifiable and measurable." *Wanton v. Wal-Mart Stores Texas, L.L.C.*, 23 F.4th 422, 431 (5th Cir. 2022) (citation omitted).

### III.   A New Trial, or at Least a Remittitur, On Damages Is Warranted

The jury awarded SVV a little over $10 million. But its award is premised on unsupported legal theories and is unsupported by the great weight of the evidence. A new trial is warranted, and at the very least a remittitur on damages is appropriate.

#### A.   The Damages Award Relies on an Improper Entire Market Value Analysis[1]

Under Section 284, a patentee should receive the "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention." 35 U.S.C. § 284. As Section 284 makes clear, the award is "for the use made of the invention." *Id.* As such, where small elements of a multi-component product are accused of infringement (like here), calculating a royalty on the entire product carries a risk that the patentee will be overcompensated for noninfringing components in that product. As such, it is generally required that a royalty award be based "not on the entire product, but instead on the smallest salable patent-practicing unit." *See, e.g.*, *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 66-71 (Fed. Cir. 2012) (internal quotation marks and citations omitted). The entire market value rule is a narrow exception to that rule. *Id.* at 67. If and only if the patentee can show that "the patented feature drives the demand for the entire multi-component product," then that "patentee may be awarded damages as a percentage

---

[1] The Fifth Circuit has held the district court "has discretion to consider new theories raised for the first time in a post-trial brief." *Quest Medical, Inc. v. Apprill*, 90 F.3d 1080, 1087 (5th Cir. 1996). In *LaserDynamics*, the Federal Circuit found "no abuse of discretion" in a district court's decision "to grant [the defendant's] motion for a remittitur or a new trial" when that defendant, for the first time in post-trial briefing, identified an error in having an entire market value theory go to the jury when the patentee had not established the patented invention drove demand for the larger product. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 70-71 (Fed. Cir. 2012) (affirming district court's grant of a defendant's motion for a remittitur or a new trial based on improper entire market value rule theory presented to the jury).

of revenues or profits attributable to the entire product." *Id.* (citing *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1549, 1551 (Fed. Cir. 1995)). When a patentee presents an entire market value theory to the jury without showing that the patented feature drove demand, a new trial is warranted. *E.g.*, *Provisur Techs., Inc. v. Weber, Inc.*, No. 2023-1438, 2024 WL 4363502, at *5-7 (Fed. Cir. Oct. 2, 2024) (reversing district court denial of new damages trial, and finding abuse of discretion to have allowed case to proceed to jury on entire market value theory without any showing patented feature drove demand for entire product). That is the case here, and a new trial, at least on damages, is warranted.

At trial, Dr. Farber (SVV's damages expert) presented a reasonable royalty analysis going through the *Georgia-Pacific* factors. Tr. 328-396. As part of that analysis, he determined additional profit that Acer allegedly "gained as a result of the use of the patented technology." *Id.* at 361. In particular, he determined that profit "as a function of cost savings," and used a regression analysis to measure those cost savings." *Id.* at 361-362. The input into his regression model depended upon "Acer's purchase data of it buying the monitors" that incorporated the "light guide plate" with the accused functionality. *Id.* at 370-371. And he concluded that, "all else equal, . . . for monitors with equal space, Acer will pay $18.64 less by using the patented technology," which, in turn, results in more profit for Acer. *Id.* at 373-374, 377-379. Dr. Farber then conducted a contribution analysis, and determined Acer would agree to a 68.3 (Acer)/31.7 (SVV) profit split. *Id.* at 377-381. Applying this split resulted in Dr. Farber's $5.91 per-unit royalty. *See id.*

What the above makes clear is that Dr. Farber's analysis focuses on "profits attributable to the entire product," not just the patented feature. *See LaserDynamics*, 694 F.3d at 66-71; *Provisur*, 2024 WL 4363502, at *5-7. Indeed, the accused functionality resides in "light guide plates" which are incorporated into the accused monitors. Yet, despite the fact that the patented features is simply

one component within the accused monitors (and one that costs, on average, $2 to make, Tr. 412),

Dr. Farber nevertheless conducted a cost savings analysis with regard to the accused monitors. *See*

*id.* at 411-413. In fact, when asked on cross examination if the "dependent variable that you used"

in the regression analysis "was the cost of the entire monitor," Dr. Farber responded "[y]es." *Id.* at

411. Dr. Farber used the entire market value rule to award SVV damages for "revenues or profits

attributable to the entire product." *LaserDynamics*, 694 F.3d at 66-71. Yet nowhere did Dr. Farber

walk through the necessary analysis to show the patented feature drove the demand for the entire

product (e.g., show light guide plates drove demand for monitors). This improper use of the entire

market value rule warrants a new trial.

This case is indistinguishable from *Provisur*. 2024 WL 4363502, at *5-7. There, a patentee

sought to use the entire product as the royalty base to calculate reasonable royalty damages. *Id.* at

*6. But the evidence the patentee submitted to show the patented feature drove demand—an effort

SVV did not purport to undertake—was conclusory at best. *See id.* at *6-7. The patentee "failed to

proffer sufficient evidence that other features of the slicing line do not cause customers to purchase

the accused products." *Id.* at *7. Nor were "market studies or consumer surveys" conducted and/or

offered to show "whether the demand" for the entire product was "driven by the patented features."

*Id.* The Federal Circuit explained, while "[n]o one type of evidence is needed to show the patented

feature drove customer demand, . . . here there is none." *Id.* A new trial on damages was required

in *Provisur*. *See id.* And the same result is required here.

**B.**   **A New Trial or at Least Remittitur Is Also Required Because the Great Weight
of the Evidence Does Not Support the Jury's $10 Million Award**

A patentee is entitled to no "less than a reasonable royalty" if a judge or jury finds that the

accused infringer has infringed. 35 U.S.C. § 284. But a reasonable royalty is just that, a *reasonable*

one. It is "the amount that a person, desiring to manufacture[, use, or] sell a patented article, as a

business proposition, would be willing to pay as a royalty[,] and yet be able to make[, use, or] sell the patented article, in the market, at a reasonable profit." *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984) (quoting *The Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co.*, 95 F.2d 978, 985 (6th Cir. 1938)) (other citations omitted) (alterations in original). When the verdict is against the great weight of the evidence, a new trial on damages, or at least remittitur, is appropriate. *See, e.g.*, *LoneStar Tech. Innovations, LLC v. ASUSTEK Comp. Inc.*, No. 6:19-cv-00059-RWS, 2022 WL 1498784, at *5-8 (E.D. Tex. Mar. 18, 2022); *QPSX Devs. 5 Pty Ltd. v. Nortel Networks, Inc.*, No. 2:05-cv-00268, 2008 WL 728201, at *3 (E.D. Tex. Mar. 18, 2008); *Hynix Semiconductors, Inc. v. Rambus, Inc.*, CV-00-20905-RMW, 2006 WL 1991760, at *1-4 (N.D. Cal. July 14, 2006); *see also e.g.*, *Seidman v. American Airlines, Inc.*, 923 F.2d 1134, 1140-42 (5th Cir. 1991).

The jury's lump-sum award is not supported by the great weight of the evidence. At trial, SVV's damages theory was based upon a per-unit *running* royalty. Tr. 375-376. Dr. Farber (SVV's damages expert) opined the parties "would have agreed to a running royalty structure" of $5.91[2] for each infringing unit resulting in a total running royalty ranging from about $5.4 million to about $7.5 million through trial (depending upon whether the jury found indirect infringement). *See, e.g.*, *id.* at 375, 384, 393.

Dr. Farber presented one additional number to the jury, which he called a "lump sum." *See id.* at 388-89. Dr. Farber calculated his "lump sum" by (i) taking *his* projection of Acer "sales from trial through the first patent to expire in 2030," (ii) multiplying *those* projected sales by $5.91, and (iii) adding the resulting number to his prior number through trial (about $5.4 million to about $7.5

---

[2] A per-unit running royalty improperly based on the entire market value rule, as discussed above. *See* Section III.A.

million), resulting in a range of about $13.2 to $15.2 million. *Id.* at 388-89; Ex. 2 (PDX-4) at 51, 53. Dr. Farber explained, in order to adequately calculate damages in this fashion, the parties would have needed "some idea of Acer's use going forward"—without it, "Acer overpays or underpays," and "that's not what the parties would want." Tr. 375-76. But no such evidence of Acer's use going forward was offered by SVV or Dr. Farber. *See id.* at 375-376 (Dr. Farber explaining it is "hard to predict in 2017 how Acer would use the patented technology through the life of the patents"). His "lump sum" theory was woefully unsupported.

Acer's theory of damages, on the other hand, was based on a lump sum model derived from SVV's earlier licenses to the asserted patents. According to Ms. Shang (Acer's corporate witness), Acer prefers to structure patent royalties as a one-time lump-sum to avoid per-unit accounting. *Id.* at 493, 485-93. Dr. Ugone (Acer's damages expert) assessed SVV's earlier licenses to the patents, considered Acer's preference for a lump-sum arrangement, and opined that the parties would have agreed to a lump sum between $188,000 and $767,000. *Id.* at 863; *see also id.* at 858-63. This was the only lump-sum damage award adequately supported by the evidence at trial.

Nevertheless, the jury awarded a one-time lump sum of $10,306,900—*significantly higher* than any actual one-time lump sum figure offered at trial. ECF No. 158 at 8. Indeed, SVVs belated "lump sum" determination required evidence of "Acer's use going forward," but no such evidence was presented to the jury. *Cf. Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009) (finding the jury's award was "problematic" because "no evidence of record establishes the parties' expectations about how often the patented method would be used by consumers"). No evidence of record demonstrated Acer would have agreed to anywhere near a $10 million lump sum during the 2017 hypothetical negotiation. And the only actual lump-sum damages theory presented to the jury and supported by the evidence—Acer's—estimated that Acer would have agreed to no more than

a lump-sum award of $767,000. "This is not an instance in which the jury chose a damages award somewhere between the maximum and minimum lump-sum amounts advocated." *Id.* at 1332. That range was $188,000 to $767,000. Tr. 858-863. This jury award is not supported by the great weight of the evidence. Acer respectfully requests this court order a new trial on damages or alternatively remit the award to a one-time lump sum in the amount of $767,000.

## IV.    The Jury's Validity Determination Goes Against the Great Weight of the Evidence

Acer presented unrebutted expert testimony that claim 16 of the '135 patent, claims 9 and 14 of the '397 patent, claim 10 of the '191 patent, and claim 17 of the '205 patent are invalid.[3] The jury's contrary finding is against the great weight of the evidence, and a new trial is warranted on this issue. *See, e.g.*, *LG Elecs., U.S.A., Inc. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 561 (D. Del. 2011) (finding the jury's verdict of nonobviousness "goes against the great weight of the evidence" when defendant presented unrebutted evidence that claims would have been obvious, and awarding a new trial).

Indeed, Acer's expert (Dr. Coleman) walked through each and every element of the claims and showed how they were anticipated and/or obvious over the prior art. *E.g.*, Tr. 592-621 (claim 16 of the '135 patent), 634-648 (claims 9 and 14 of the '397 patent), 656-683 (claim 10 of the '191 patent), 694-723 (claim 17 of the '205 patent). This meaningful analysis was left unrebutted. SVV did not present any rebuttal case on invalidity. *Id.* at 886 ("we don't have any rebuttal case"). SVV did not purport to cross examine Dr. Coleman regarding invalidity of the '205 and the '397 patents.

---

[3] Dr. Coleman presented unrebutted testimony showing claim 16 of the '135 patent was anticipated by Kunimochi (Ex. 7, DTX-017); claims 9 and 14 of the '397 patent were either anticipated by Kunimochi or would have been obvious over Kunimochi and Kobayashi (Ex. 8, DTX-018); claim 10 of the '191 patent would have been obvious over Coe-Sullivan (Ex. 9, DTX-014), Dubrow (Ex. 10, DTX-053), and Kunimochi; and claim 17 of the '205 patent would have been obvious over Coe-Sullivan and Kunimochi.

*See id.* at 751-811. And the limited cross examination SVV did conduct as to the '135 and the '191 patents served only to confuse and misdirect the jury. *See id.* at 783-811.

For example, Dr. Coleman offered an inherent anticipation theory for claim 16 of the '135 patent. *See, e.g.*, *id.* at 592-621. Instead of rebutting the substance, SVV asked questions that were not correct under the law and tried to confuse the jury. *Id.* at 790-799. In particular, SVV suggested Dr. Coleman's analysis was deficient because certain language was not expressly used, and figures did not show features.[4] *Id.* at 792 ("[T]he word 'cylindrical lens' is not 20 in Kunimochi, correct? A: It's synonymous with arc lenses, which is in Kunimochi."), 795 ("Kunimochi does not even have the word 'flexible' . . . ? A: I don't believe it does. Q: It's perfectly reasonable that Kunimochi is rigid . . ? A: No."), 794 ("Q: You see any figures in Kunimochi of those dots? A: No, one is not needed. It describes it clearly in the text."). But that is not, nor has it even been, the proper standard for anticipation. *See Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 910 (Fed. Cir. 2022) ("To anticipate . . . [a] reference must disclose each and every element of the claim, either explicitly or inherently. While those elements must be arranged or combined in the same way. . . , the reference need not disclose the elements in the very same terms used by the patent."); *id.* at 910-11 (reversing grant of summary judgment of no anticipation because "while not specifically mentioning MSBs," the prior art "exactly describes the concept of MSBs as" claimed (quotation marks omitted)); *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009) (the "reference need not satisfy an ipsissimis verbis test" (internal quotation marks omitted)).

---

[4] SVV also sowed confusion by referring to demonstratives trial counsel used in the opening. Tr. 787-790. Trial counsel's demonstratives are not evidence. Nor do they reflect the opinions that the expert carefully walked through during his direct examination, which compared the disclosure in the prior art to the claim limitations at issue. *Id.* at 592-621.

SVV then continued its cross examination regarding the '135 patent by suggesting that Dr. Coleman failed to establish Kobayashi was prior art to the '135 patent. *See, e.g.*, Tr. 805-811. But whether Kobayashi qualified (or could qualify) as prior art to the '135 patent was entirely irrelevant given that the challenge Dr. Colemen proposed and walked through was simply that Kunimochi (a *different reference*) inherently anticipated claim 16. *Id.* at 592-621, 812-813. Instead of rebutting the substance of Dr. Coleman's invalidity analysis, SVV misled the jury with irrelevant questions and improper legal standards.

So too did SVV's cross examination as to the '191 patent fail to meaningfully rebut analysis and instead only confused and misled the jury by suggesting an improper legal standard. *See, e.g.*, Tr. 799-805. During cross examination, SVV did not challenge the disclosure of any of the asserted prior art in the combination (Coe-Sullivan, Dubrow, Kunimochi). *See, e.g., id.* at 800-805. Instead, it asked questions suggesting that Dr. Coleman had to show two competitors would have combined their technologies together to reach the claimed invention. *Id.* at 800-801 ("Now, in that 2008/2009 time period, those companies were competitors . . . ? Yet, you think these two competitors would combine their technology? . . . . Are you telling the jury that those two competitors, in 2008, would put their patents together?"). But that is not what a proper obviousness analysis asks. *See id.* at 803 ("you are asking a question that's not correct under the law"). An obviousness analysis requires a showing that the claimed elements are in the prior art, and that the skilled artisan would have been motivated to combine that prior art with a reasonable expectation of success. *E.g.*, *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 415-426 (2007). And that is precisely what Dr. Coleman explained, unrebutted. *See* Tr. 656-683. To suggest Dr. Coleman needed to demonstrate that two competitors would work together and put aside divergent business needs to create the alleged invention, or that an actual product existed in the market with the claimed features, flaunts the obviousness standard

and collapses the obviousness analysis into one of anticipation. It confuses and misleads the jury.

And it cannot sustain a jury finding of validity.

SVV presented no rebuttal case. It asked not a single question during cross examination as

to the '205 and the '397 patents. And the only questions it asked during cross examination for the

'135 and the '191 patents ignored the actual legal standards and served to mislead and confuse the

jury. The jury's verdict finding the asserted claims valid is against the great weight of the evidence,

and a new trial is warranted on this issue. *See, e.g.*, *LG Elecs.*, 798 F. Supp. 2d at 561 (finding jury

verdict "against the great weigh of the evidence," when there was unrebutted evidence that claims

would have been obvious, and awarding a new trial).

## V.     The Jury's Willfulness Determination Goes Against the Great Weight of the Evidence

There can be no dispute that, to establish willfulness, a patentee must show that a defendant

had a "specific intent to infringe at the time of the challenged conduct." *See Provisur*, 2024 WL

4363502, at *4. The jury, however, rendered a verdict of willful infringement despite the absence

of any evidence showing that Acer had the requisite "specific intent to infringe." As such, the jury

verdict is against the great weight of the evidence, and a new trial is warranted on this issue.

As to pre-suit willfulness, SVV offered no evidence or testimony showing that Acer had a

specific intent to infringe the asserted patents. There is no dispute Acer was unaware of the asserted

patents until it received a single-page letter from SVV's counsel on January 22, 2021. *See* Tr. 453,

481-83; Ex. 3 (JTX-001) (letter dated January 22, 2021, sent to Acer America Corporation, Acer's

U.S.-based subsidiary). While the letter identified the four asserted patents in this litigation, among

others, it included no claim charts, it identified two products that were not identified as infringing

in the Complaint, and it called out two claims from the '397 patent that were not among the claims

found valid and infringed by the jury. *Compare* Ex. 3 (JTX-001), *with* ECF No. 158 at 4. The letter

offered no more than an identification of patents and a request for Acer America to "advise [SVV]

whether it is willing to engage with [SVV] in discussions" so that the parties could seek "amicable resolution." *Id.*

Acer's actions after receiving the letter show anything but the "specific intent to infringe." Instead, they show Acer acting diligently and responsibly to engage SVV. Acer responded one day after it received SVV's letter (within seven days of when the letter was mailed). Ex. 4 (JTX-002); Tr. 482. And Acer specifically asked for "more information such as claim charts" so it could assess infringement (because Acer, itself, does not make the products) and discuss a license. Ex. 4 (JTX-002); Tr. 458-60, 480, 521-53. SVV ignored Acer's request to learn the basis of SVV's allegations, to engage in discussions, or to seek amicable resolution. Tr. 481-82. Rather, SVV filed a Complaint in June 2022, eighteen months later, accusing Acer of willful infringement. Tr. 481-83; ECF No. 1. Nothing in the above narrative demonstrates Acer had knowledge it purportedly infringed claim 16 of the '135 patent, claims 9 and 14 of the '397 patent, claim 10 of the '191 patent, or claim 17 of the '205 patent. Nor is there anything in that above narrative demonstrating Acer had the *specific intent* to infringe before SVV filed its Complaint. *See Provisur*, 2024 WL 4363502, *5 (explaining "knowledge of the asserted patent[s] and evidence of infringement is necessary, but not sufficient, for a finding of willfulness" and finding evidence insufficient to sustain jury verdict of willfulness).

As to post-suit willfulness, the great weight of the evidence adduced at trial fails to support a jury verdict of willful infringement. After Acer received SVV's infringement allegations by way of the Complaint, Acer investigated and formed a good faith belief that it did not infringe, and that the patents were invalid. *E.g.*, ECF No. 9, ¶¶ 38-40, 44-54; *id.* at 6. As part of that analysis, Acer's legal team determined it did not need to redesign its products. Tr. 469. Acer vigorously defended this lawsuit, hiring experts and submitting defenses strong enough to reach the jury. *E.g.*, Tr. 551-750; 811-824. SVV presented no contrary evidence on Acer's post-complaint beliefs. Indeed, SVV

did not even purport to rebut or cross-examine Acer's expert on the invalidity of two of the asserted patents. *See supra* Section IV. There is no evidence demonstrating that Acer had *specific intent* to infringe after SVV filed its Complaint. Because the jury's verdict of willful infringement is against the great weight of the evidence, a new trial is warranted.

## VI.     The Jury's Statutory Infringement Determination Goes Against the Great Weight of the Evidence and Was Tainted by a Prejudicial Error

The jury found Acer liable for infringement, and was instructed on three theories: (1) direct infringement based upon Acer's own actions; (2) Acer's vicarious liability for the actions of Acer America; and (3) indirect infringement. Regardless of which theory the jury embraced to find Acer liable for infringement, that theory is unsupported by the great weight of the evidence adduced at trial. Moreover, as to vicarious liability, the Court failed to properly instruct the jury about piercing the corporate veil, and that error also requires a new trial.

### A.     A Finding of Direct Infringement Based Upon Acer's Actions Is Against the Great Weight of the Evidence

There is no evidence to support a jury's finding of direct infringement based upon Acer's own actions. For a finding of direct infringement, SVV would have had to demonstrate that Acer made, used, sold, offered for sale, or imported in the United States a patented invention. 35 U.S.C. § 271(a). But Acer has taken no such actions. Even if the accused products were made in the United States (and they are not), Acer does not make the accused products. Tr. 437, 515-516. No evidence showed Acer uses the accused products. There is no dispute Acer does not sell any of the accused products in the United States. *Id.* at 436, 526-527. And no evidence adduced at trial demonstrated that Acer offers to sell the accused products in the United States. *Id.* at 462-463 (the only evidence at trial showed Acer offers *some* products via a website, there was no evidence showing the website offered any of the accused products *specifically*). The evidence likewise failed to show that Acer imports accused products into the United States. *Id.* at 440, 529-30 (noting Acer America, not

Acer, imports accused products into the United States). Any jury verdict based upon Acer's direct infringement is directly contrary to the great weight of the evidence.

    **B.**    **A Finding of Vicarious Liability for the Actions of Acer America Is Against the Great Weight of the Evidence**

Because Acer did not directly infringe based on its own actions, SVV contends Acer should nevertheless be responsible for any direct infringement of Acer America (Acer's subsidiary) under a vicarious liability theory. SVV has presented three theories—(i) direction and control; (ii) agent; and (iii) alter ego. No evidence from trial supports finding Acer vicariously liable under any theory. And, as such, any liability finding premised on vicarious liability is against the great weight of the evidence.

        **1.**    **There is No Evidence Acer Directed or Controlled Acer America**

A finding of liability premised on a direction and control theory is directly contrary to the great weight of the evidence. First, as to sales and offers for sale, Mr. Ho testified that Acer is not "involved in Acer America's sales to its customers." Tr. 527. The "Supply Agreement" between Acer and Acer America (Ex. 5 (JTX-015)) *does not obligate* Acer America to sell anything at all. It is a "Supply Agreement," not a "Sales Agreement," and provides a contract where Acer America (as Buyer) *can* purchase products from Acer (as Supplier). *Id.* at 2 ("[Acer] wishes to contract with [Acer America] and sell to [Acer America] the Products."). According to this Agreement, although Acer America has to place its orders with Acer if it wishes to purchase products, (*id.* at 4; Tr. 527-28), nothing obligates Acer America to purchase products from Acer or sell any of Acer's products, let alone sell the accused products in a specific jurisdiction, such as the United States. Ex. 5 (JTX-015) at 3-4 ("2. Obligations of Buyer.").

As for importation, Mr. Ho testified Acer is not involved in the shipment of products after manufacturing. Tr. 529-30. As Ms. Shang testified, "Acer Inc. is not an importer"—"Acer America

is the importer." *Id.* at 440. This testimony is consistent with the plain language of the Agreement, which provides Acer America arranges for importation, products will be shipped "to the place and date designated" on Acer America's order, Acer America "shall act as the importer of record," and Acer America shall bear all charges incurred as a result of any importation. Ex. 5 (JTX-015) at 4-5. Acer does not direct or control Acer America and/or the shipment of accused products into the United States. *See also id.* (JTX-015) at 8.

### 2. There Is No Evidence Showing Acer America Was Acer's Agent

A finding of liability premised on an agency theory is directly contrary to the great weight of the evidence. The only agreement of record between Acer and Acer America makes clear that Acer America *does not act* as an agent of Acer. Indeed, Ms. Shang testified the Supply Agreement between Acer and Acer America "talks about the supply between the two companies" and provides that, while Acer America can "market, sell, and distribute" products "on behalf of" Acer (*see* Ex. 5 (JTX-015) at 10), neither shall "*have the authority to represent itself as an agent or employee of the other*" (*id.* (JTX-015) at 8 ("Independent Contractor")) (emphasis added).

### 3. There Is No Evidence Showing Acer America Is Acer's Alter Ego

SVV contends Acer America acted as an alter ego of Acer and should be vicariously liable for Acer America's infringement under this theory. A new trial is warranted here for two reasons. First, the Court improperly instructed the jury as to what SVV had to prove to show Acer America acted as an alter ego and pierce the corporate veil. Second, even if the jury had been given the right instruction, a finding of liability would still be against the great weight of the evidence.

#### a. The Court's Improper Instruction Regarding Piercing the Corporate Veil Requires a New Trial

To pierce the corporate veil, and hold a parent liable for the acts of its subsidiary, requires showing that (i) the parent exercised complete control over the subsidiary with regard to the alleged

infringement, *and* (ii) that control was used to commit a fraud or injustice that injured SVV. *See United States v. Bestfoods*, 524 U.S. 51, 62-63 (1998); *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593-94 (5th Cir. 1999); *Bostic v. The Daily Dot, LLC*, No. 1:22-CV-158-RP, 2023 WL 2317789, at *4 (W.D. Tex. Mar. 1, 2023); *see also Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 739 (Tex. App. 1998); *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984). Both things must be shown—complete control to perpetrate a fraud/injustice. And any jury instruction as to piercing the corporate veil must make clear that both things must be satisfied. Here, however, the Court did not include an instruction as to the second element (control was used to commit fraud or injustice). *Compare* Tr. 900, *with id.* at 924-929. Because the jury instructions failed to describe an essential element SVV had to prove to establish Acer America was the alter ego of Acer, the erroneous jury instruction failed to properly guide the jury in its deliberation and affected the outcome of the case. *See Z4 Technologies, Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1353 (Fed. Cir. 2007) (explaining to grant a new trial on the basis of an erroneous jury instruction, the Fifth Circuit uses a two part test); *see also, e.g.*, *Wordtech Sys., Inc. v. Integrated Network Soln's, Inc.*, 609 F.3d 1308, 1314-15 (Fed. Cir. 2010) (reversing denial of motion for new trial on liability of the individual corporate officer's for the company's direct infringement because failed to properly instruct jury on piercing the veil before holding the corporate officers liable). The Court's improper jury instruction about piercing the corporate veil requires a new trial on liability.

### b.   Regardless, No Evidence Supports an Alter Ego Theory

A finding of liability premised on an alter ego theory is directly contrary to the great weight of the evidence. Here, Acer America is an indirect, wholly-owned subsidiary of Acer. Ex. 6 (JTX-014) at 74, 83-84. Acer merely operates control over Acer America in the way that a parent would operate control over a subsidiary. *See* Tr. 441, 446-52. As a corporate parent and shareholder, Acer

ultimately bears responsibility for the actions of Acer America, its subsidiary. *Id.* at 437, 440, 448,

453-454. But that much is true for any shareholder of any corporation. The control needed to pierce

the corporate veil "is not mere majority or complete stock control but such domination of finances,

policies and practices that the controlled corporation has . . . no separate mind, will or existence of

its own and is but a business conduit for its principal." *See Gardemal*, 186 F.3d at 593-94. Such a

showing was not made here.

Indeed, no evidence showed Acer exercises such dominant control over Acer America that

it can be said Acer America has "no separate mind, will, or existence of its own." *Id.* Acer America

maintains separate property (Tr. 441-42), pays the salaries of its own employees (Tr. 442-43), and

has officers which are not in common with Acer (Tr. 448). The companies maintain clear dividing

lines between operations. Acer is headquartered in Taiwan, designs the look of monitor products,

contracts with manufacturers, and sells products to subsidiaries. Tr. 513-22, 526. Acer America,

in contrast, purchases products from Acer outside the United States, arranges for shipment to the

United States, handles importation and any related customs requirements, and resells to consumers.

Tr. 479-80, 527-30. Acer America performs these activities on its own, with no involvement from

Acer. Tr. 527-30. And each acts independently in its own decisions. *See* Ex. 5 (JTX-015) ¶ 13.4.

Nor is there any evidence that Acer America operates with grossly inadequate capital, that

Acer uses Acer America's property as its own, that daily operations of the two are not separate, or

that Acer exercises such pervasive control over Acer America that it dictates each and every facet

of Acer America's business from broad policy decisions to routine matters of day-to-day operation.

*See Gardemal*, 186 F.3d at 593-94. At best, the jury heard Acer owns (indirectly) 100% of Acer

America, there are a few overlapping directors, and Acer reports consolidated financial statements.

But, as the jury was instructed, "100 percent ownership and shared management personnel are not

alone enough to establish the required level of control." Tr. 929. These facts reveal nothing more than a typical corporate relationship, which cannot pierce the veil. *E.g.*, *Gardemal*, 186 F.3d at 539 (veil not pierced when record "reveals nothing more than a typical corporate relationship"). This Court disregards the "corporate fiction when the corporate form has been used as part of a basically unfair device to achieve an inequitable result." *See Gardemal*, 186 F.3d at 594 (internal quotation omitted). Here, there is no indication SVV could not recover by suing Acer America, a California corporation, and there is no evidence showing Acer America is undercapitalized or underinsured. *Gardemal*, 186 F.3d at 594.

### C.    A Finding of Indirect Infringement Is Against the Great Weight of the Evidence

Induced infringement requires a showing that Acer possessed specific intent to encourage another's infringement. *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1118-19 (Fed. Cir. 2022). "In some respects, the intent standard for inducement is akin to the one for willfulness, as both rest on the subjective intent of the accused infringer." *Id.* at 1119. And, as explained above in Section V, Acer lacked specific intent to encourage another's infringement of the asserted claims, and instead, had a good faith belief of noninfringement. A finding of indirect (induced) infringement is against the great weight of the evidence.

There was no evidence presented at trial that Acer knew that the accused products imported into the United States, and sold here, by Acer America infringed. None. Thus, the only remaining theory to support a finding of induced infringement would be "willful blindness." *See id.* at 1118. Willful blindness has "two basic requirements: (1) The defendant must subjectively believe that there is a high probability that a fact exists[,] and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.* But a finding of willful blindness is against the great weight of the evidence presented at trial.

At no time did the jury hear evidence showing Acer subjectively believed there was a high probability of infringement. Instead, Acer's trial counsel presented reasonable non-infringement defenses supported by expert testimony. Tr. 551-750, 811-24. The jury also heard that Acer's legal team investigated the patents and concluded not to design around the asserted claims. Tr. 469. At no time did the jury hear any testimony that Acer believed it probably infringed.

Nor did the jury hear evidence that Acer took deliberate actions to avoid learning whether it infringed. In fact, the record reveals the opposite. Within a day of receiving SVV's pre-suit letter, Acer responded. *E.g.*, Tr. 453, 480-83; Ex. 3 (JTX-001); Ex. 4 (JTX-002). Acer accepted the offer to engage in discussions and asked SVV for additional evidence so Acer could investigate. Ex. 4 (JTX-002). The asserted claims, after all, cover a component of Acer's products which Acer does not design, does not specify, and does not assemble into the accused products. Tr. 515-16, 518-23. SVV did not engage in discussions, and Acer was met with nothing but silence and the passage of time before SVV filed this litigation. Tr. 481-83. If anything, the evidence shows Acer took steps to ascertain whether it infringed (not avoid learning whether it infringed) by asking the patentee to share evidence. Tr. 481-83; Ex. 4 (JTX-002).

## VII.   Conclusion

For the foregoing reasons, Acer respectfully requests a new trial, or at the very least, a new trial or remittitur on damages.

DATED: October 22, 2024

/s/ Jacob A. Schroeder

Jacob A. Schroeder (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Stanford Research Park, 3300 Hillview Avenue,
2nd Floor
Palo Alto, CA 94304
(650) 849-6600
jacob.schroeder@finnegan.com

Benjamin A. Saidman (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
217 17th Street, NW
Suite 1400
Atlanta, GA 30363-6209
(404) 653-6510
benjamin.saidman@finnegan.com

Sydney Kestle (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000
sydney.kestle@finnegan.com

Kaiwen Tseng (CA Bar No. 193756)
Craig Kaufman (CA Bar No. 159458)
Jerry Chen (CA Bar No. 229318)
TECHKNOWLEDGE LAW GROUP LLP
20660 Stevens Creek Blvd., Suite 381
Cupertino, CA 95014
Tel: (650) 517-5200]
Fax: (650)562-8054
ktseng@tklg-llp.com
ckaufman@tklg-llp.com
jchen@tklg-llp.com

Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar. No. 04972020
FINDLAY CRAFT, PC.
7270 Crosswater Avenue, Suite B

Tyler, TX 75703
Tel: (903) 534-1100
Fax: (903) 534-1137
efindlay@findlaycraft.com
bcraft@findlaycraft.com

*Attorneys for Defendant Acer Inc.*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendant met and conferred with counsel for Plaintiff. Counsel for Plaintiff indicated that Plaintiff opposes this motion, and the parties were not able to reach agreement on this matter.

DATED: October 22, 2024

/s/ *Jacob A. Schroeder*
Jacob A. Schroeder

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that foregoing document was served via electronic mail to all counsel of record who have appeared in this case per Local Rule CV-5 on October 22, 2024.


/s/ *Jacob A. Schroeder*
Jacob A. Schroeder