**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| SVV TECHNOLOGY INNOVATIONS INC. | § § § | |
| *Plaintiff*, | § § | Civil Action No.  6:22-cv-00640-ADA |
| v. | § § | **JURY DEMANDED** |
| ACER INC. | § § § | ███████████████ |
| *Defendant*. | § | |

**PLAINTIFF SVV TECHNOLOGY INNOVATIONS INC.'S RESPONSE TO
DEFENDANT ACER INC.'S RULE 59 MOTION FOR NEW TRIAL OR REMITTITUR**

## <u>TABLE OF CONTENTS</u>

I.      THE COURT SHOULD NOT GRANT A NEW TRIAL ON DAMAGES...................... 1

        A.      The damages award does not rely on the entire market value rule. ........................... 1

                1.      Acer's entire market value rule argument is waived. ........................................ 1

                2.      Dr. Farber did not implicate the entire market value rule. ............................... 2

        B.      The great weight of the evidence supports the jury's award. ................................... 3

II.     THE COURT SHOULD NOT GRANT A NEW TRIAL ON INVALIDITY. ................. 5

        A.      The jury's finding of no invalidity is not against the great weight of
                evidence. ................................................................................................................. 6

        B.      In this case, the jury clearly did not consider Dr. Coleman's testimony
                credible................................................................................................................... 9

III.    THE JURY'S WILLFULNESS FINDING IS SUPPORTED BY AMPLE
        EVIDENCE AND DOES NOT WARRANT A NEW TRIAL. ....................................... 11

IV.     THE JURY'S INFRINGEMENT VERDICT IS WELL-SUPPORTED AND
        THERE WAS NO PREJUDICIAL ERROR IN THE CHARGE ................................... 15

        A.      The jury's infringement finding is not against the great weight of the
                evidence. ............................................................................................................... 15

        B.      Acer is liable for Acer America's infringement. ..................................................... 15

                1.      The great weight of the evidence supports that Acer controlled Acer
                        America and that Acer America is Acer's agent. ............................................ 16

                2.      Acer's alter ego arguments cannot deliver it a new trial. ............................... 17

                        (a)     Any error in the charge could not have affected the outcome of
                                the case................................................................................................... 17

                        (b)     Acer's proposed instruction is not a correct statement of law. .................... 18

                        (c)     The evidence supports the jury's alter ego finding..................................... 19

        C.      The induced infringement verdict is not against the great weight of the
                evidence. ............................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott v. Equity Group, Inc.*
2 F.3d 613 (5th Cir. 1993) ............................................................... 2

*Acceleration Bay LLC v. Activision Blizzard, Inc.*
324 F. Supp. 3d 470 (D. Del. 2018) ................................................. 4

*Akamai Techs., Inc. v. Limelight Networks, Inc.*
797 F.3d 1020 (Fed. Cir. 2015) ...................................................... 17

*Allied Bank-W., N.A. v. Stein*
996 F.2d 111 (5th Cir. 1993) ........................................................... 2

*Atlas Glob. Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*
661 F. Supp. 3d 643 (W.D. Tex. 2023) ......................................... 12

*Baisden v. I'm Ready Prods., Inc.*
693 F.3d 491 (5th Cir. 2012) ......................................................... 17

*BillJCo, LLC v. Apple Inc.*
583 F. Supp. 3d 769 (W.D. Tex. 2022) ......................................... 12

*Bostic v. Daily Dot, LLC*
No. 1:22-CV-158-RP, 2023 WL 2317789 (W.D. Tex. Mar. 1, 2023) ...................................... 18

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan "Bridas I"*
345 F.3d 347 (5th Cir. 2003) ......................................................... 19

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*
447 F.3d 411 (5th Cir. 2006) ......................................................... 19

*Caboni v. General Motors Corp.*
398 F.3d 357 (5th Cir. 2005) ........................................................... 9

*Chicago, M. & St. P.R. Co. v. Minneapolis Civic and Commerce Assn.*
247 U.S. 490 (1918) ....................................................................... 18

*Chrimar Sys., Inc. v. Alcatel-Lucent Enter. USA Inc.*
No. 6:15-CV-00163-JDL, 2017 WL 568712 (E.D. Tex. Feb. 13, 2017) .................................... 1

*Citro-Rey S. de R.L. de C.V. v. L&M Companies, Inc.*
No. CV M-07-154, 2009 WL 10692862 (S.D. Tex. Oct. 13, 2009) ......................................... 10

*Cloudofchange, LLC v. NCR Corp.*
  No. W-19-CV-00513-ADA, 2022 WL 15527756 (W.D. Tex. Oct. 27, 2022)..................... 1, 11

*Commonwealth Scientific & Indus. Research Org. v. Cisco Sys., Inc.*
  809 F.3d 1295 (Fed. Cir. 2015)................................................................................... 3

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*
  880 F.3d 1356 (Fed. Cir. 2018)................................................................................... 6

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*
  No. 2:15-cv-00011-RSP, 2018 WL 3089701 (E.D. Tex. Mar. 7, 2018)..................... 4

*ESW Holdings, Inc. v. Roku, Inc.*
  No. 6:19-CV-00044-ADA , 2021 WL 3742201 (W.D. Tex. Aug. 24, 2021)........................... 11

*Finesse Wireless LLC v. AT&T Mobility LLC*
  No. 2:21-cv-00317, 2023 WL 5613172 (E.D. Tex. Aug. 20, 2023).................................... 6, 11

*Fractus, S.A. v. Samsung Elecs. Co.*
  876 F. Supp. 2d 802 (E.D. Tex. 2012)....................................................................... 9

*Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*
  394 F.3d 1368 (Fed. Cir. 2005)................................................................................... 4

*Gardemal v. Westin Hotel Co.*
  186 F.3d 588 (5th Cir. 1999) ............................................................................... 18, 19

*Globe Indem. Co. v. Richerson*
  315 F.2d 3 (5th Cir. 1963) ....................................................................................... 10

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*
  579 U.S. 93 (2016)............................................................................................... 11, 14

*Hartsell v. Dr. Pepper Bottling Co. of Texas*
  207 F.3d 269 (5th Cir. 2000) ................................................................................... 17

*In re Enhanced Sec. Rsch., LLC*
  739 F.3d 1347 (Fed. Cir. 2014).................................................................................. 7

*Jiaxing Super Lighting Elec. Appliance Co., Ltd. v. CH Lighting Tech. Co., Ltd.*
  No. 6:20-CV-00018-ADA, 2023 WL 2415281 (W.D. Tex. Mar. 8, 2023)................................. 1

*Johnson v. Sawyer*
  120 F.3d 1307 (5th Cir. 1997) ................................................................................. 17

*KAIST IP US LLC v. Samsung Elecs. Co.*
  439 F. Supp. 3d 860 (E.D. Tex. 2020) ................................................................ 14

*LaserDynamics, Inc. v. Quanta Computer, Inc.*
  694 F.3d 51 (Fed. Cir. 2012) ........................................................................ 2, 3

*Lucent Techs. v. Gateway*
  580 F.3d 1301 (Fed. Cir. 2009) ..................................................................... 4, 5

*Magēmā Tech. LLC v. Phillips 66*
  No. H-20-2444, 2023 WL 8283180 (S.D. Tex. Nov. 30, 2023) ................................... 6

*Montano v. Orange Cnty., Texas*
  842 F.3d 865 (5th Cir. 2016) ........................................................................ 15

*Netlist, Inc. v. Micron Tech., Inc.*
  No. 2:22-CV-203-JRG-RSP, 2024 WL 326563 (E.D. Tex. Jan. 27, 2024) ....................... 4

*Provisur Techs., Inc. v. Weber, Inc.*
  119 F.4th 948 (Fed. Cir. 2024) ............................................................. 3, 13, 14

*Safeco Ins. Co. of Am. v. Burr*
  551 U.S. 47 (2007) .................................................................................. 11

*Shiley, Inc. v. Bentley Lab'ys, Inc.*
  794 F.2d 1561 (Fed. Cir. 1986) ..................................................................... 12

*Simon v. U.S.*
  891 F.2d 1154 (5th Cir. 1990) .................................................................... 1, 20

*Trans World Airlines, Inc. v. Thurston*
  469 U.S. 111 (1985) ................................................................................. 11

*United States v. Bestfoods*
  524 U.S. 51 (1998) .................................................................................. 18

*Via Vadis, LLC v. Blizzard Entm't, Inc.*
  No. 1:14-cv-00810-LY, 2021 WL 5908599 (W.D. Tex. Dec. 14, 2021) ...................... 4, 5

*W. Horizontal Drilling, Inc. v. Jonnet Energy Corp.*
  11 F.3d 65 (5th Cir. 1994) .......................................................................... 18

**Statutes**

35 U.S.C. § 282 ...................................................................................... 6

**TABLE OF EXHIBITS**[1]

| Exhibit | Description |
|---|---|
| A | PTX-98 (Updated Attachment E-1 "Royalty Damages Summary" to Dr. Farber's Report) |
| B | PTX-103 (Updated Attachment E-6 "Estimated Future Royalty Damages" to Dr. Farber's Report) |
| C | PTX-118 (Attachment H-1 "Regression Log File" to Dr. Farber's Report) |
| D | PTX-119 (Attachment H-2 "Regression .do File" to Dr. Farber's Report) |
| E | PTX-120 (Attachment H-3 "Regression Dataset Preparation R Script" to Dr. Farber's Report) |
| F | PTX-121(Attachment H-4 "Specification Scraping Python Script" to Dr. Farber's Report) |
| G | PTX-6 (U.S. Patent No. 8,740,397) |
| H | PTX-8 (U.S. Patent No. 10,797,191) |
| I | PTX-9 (U.S. Patent No. 10,838,135) |
| J | PTX-10 (U.S. Patent No. 10,868,205) |
| K | DTX-17 (U.S. Patent No. 7,918,597) |
| L | PTX-401(slide showing Plaintiff's Redline of Credelle Slide Accused Products Acer's Model Numbers) |
| M | PTX-300 (Product Images for Acer KA242Y bi) |
| N | PTX-309 (Product Images for Acer R251 bid) |
| O | JTX-1 (Notice Letter) |
| P | JTX-14 (Acer's Annual Report) |
| Q | JTX-15 (Supply Agreement) |
| R | PTX-114 (Attachment F-1 "Acer Contribution Apportionment in thousands of NT$" to Dr. Farber's Report) |

---

[1] The trial transcripts are not included as exhibits to the Declaration of Aisha M. Haley but are available on the docket at ECF Nos. 160–164,173–176.

I.    **THE COURT SHOULD NOT GRANT A NEW TRIAL ON DAMAGES.**

Because the jury's award is supported by substantial evidence, the Court should deny Acer's motion for new trial or remittitur for damages.  *See, e.g.*, *Cloudofchange, LLC v. NCR Corp.*, No. W-19-CV-00513-ADA, 2022 WL 15527756, at *2 (W.D. Tex. Oct. 27, 2022) (stating that the Court may only grant a new trial when the movant shows "an absolute absence of evidence to support the jury's verdict") (quotations omitted).  In fact, Dr. Farber's analysis was so sound that Acer never even filed a *Daubert* motion against him.  Because Acer's complaints are merely waived arguments about the admissibility of Dr. Farber's testimony, Acer's motion must be denied.  *See, e.g.*, *Jiaxing Super Lighting Elec. Appliance Co., Ltd. v. CH Lighting Tech. Co., Ltd.*, No. 6:20-CV-00018-ADA, 2023 WL 2415281, at 13 (W.D. Tex. Mar. 8, 2023) ("To the extent Defendants now object to the admissibility of Ms. Kindler's testimony where they failed to object at trial, a new trial motion is an improper vehicle for their objections.").

A.  **The damages award does not rely on the entire market value rule.**

Acer first suggests that the jury's award violated the entire market value rule.  *See* ECF No. 186 ("New Trial Br.") 2–4.  This argument fails on procedure and on the merits.

1.  Acer's entire market value rule argument is waived.

It is undisputed that Acer is raising this issue for the first time post-trial.  *Id*. 1 n.1.  It is waived.  *Chrimar Sys., Inc. v. Alcatel-Lucent Enter. USA Inc.*, No. 6:15-CV-00163-JDL, 2017 WL 568712, at *3–4 (E.D. Tex. Feb. 13, 2017) (EMVR argument raised for the first time after trial waived).  Acer addresses its waiver in a footnote where it posits that the Court "has discretion" to consider new arguments.  New Trial Br. 1 n.1.  Yet Acer offers no reasons why it believes the Court *should* exercise that discretion to depart from the rules and consider its waived arguments.  *See Simon v. U.S.*, 891 F.2d 1154, 1159 (5th Cir. 1990) ("Defenses not raised or argued at trial are ordinarily waived by the parties failing to raise them." (citation omitted)); *Allied Bank-W., N.A. v.*

*Stein*, 996 F.2d 111, 115–16 (5th Cir. 1993); *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 629 (5th Cir. 1993) (court was not obligated "to permit appellants to interject a new legal theory").  The Court should reject Acer's new theory.

### 2.  Dr. Farber did not implicate the entire market value rule.

In addition to being procedurally flawed, Acer's EMVR argument is also meritless. According to Acer, under the entire market value rule, the patentee can only measure "'damages as a percentage of revenues or profits attributable to the entire product'" if "the patentee can show that 'the patented feature drives demand for the entire multi-component product.'"  New Trial Br. 2–3 (quoting *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 66-67 (Fed. Cir. 2012)). But Dr. Farber did not measure damages as a percentage of total revenue or total profit related to the infringing products, did not use the EMVR, and was not obligated to prove customer demand.

Rather than use the EMVR, Dr. Farber calculated damages using a regression analysis to establish the incremental, per-unit cost savings (and, therefore, incremental profit) associated *directly with* Acer's infringement.  *See, e.g.*, Tr. 362:15–24, 364:2–12, 373:15–25, 387:8–24; *see also* PTX-98, 103, 118, 119, 120, 121.  From there, Dr. Farber did *further* contribution apportionments determining how the parties would split the incremental benefit.  *See, e.g.*, Trial Tr. at 378:5–381:25; PTX-114.  That one of the inputs to the regression analysis is the *cost* of the monitor *does not mean* that Dr. Farber is calculating damages based on total *revenue or profit*. Because Dr. Farber used the actual, measured (and apportioned) incremental benefit of the patent as his royalty base rather than total revenue or profit, he did not use the EMVR.

An indication of the newness of this argument, not even Acer's damages expert calculated damages based on what Acer now supposes should be the smallest saleable unit, the light guide plate.  New Trial Br. 3–4; Tr. at 851:20–864:1 (Dr. Ugone, Acer's expert, calculating damages based on allegedly comparable licenses).  Nonetheless, there is no rule that damages must *always*

be calculated on the alleged smallest saleable unit. *See*, *e.g.*, *Commonwealth Scientific & Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302–03 (Fed. Cir. 2015) (rejecting proposed rule that all damages models must begin with the smallest saleable unit). Dr. Farber's regression analysis did precisely what was required under *CSIRO*: it "separate[d] the value of the allegedly infringing features from the value of all other features." *Id*. at 1301 (citation omitted)).

Acer cites no cases establishing that measuring damages using a regression analysis to determine the incremental per-unit cost-savings created by infringement implicates the EMVR. Instead, Acer cites two cases where the offending damages expert applied a royalty rate to a royalty base of total revenues without proving customer demand. *See* New Trial Br. 2–4; *LaserDynamics*, 694 F.3d at 68 ("Mr. Murtha opined that a 2% running royalty applied to QCI's total revenues from sales of laptop computers—$2.53 billion—was an appropriate reasonable royalty."); *Provisur Techs., Inc. v. Weber, Inc*., 119 F.4th 948, 957 (Fed. Cir. 2024) (damages expert "used the value of the entire slicing line [of products] as the royalty base"). As described above, because Dr. Farber calculated damages using a regression analysis to establish the incremental, per-unit cost savings (and, therefore, incremental profit) associated *directly with* the infringement, he did not apply a royalty rate to the total revenues or profits associated with the infringing products. The entire market value rule is not implicated, and Acer's motion should be denied on this ground.

**B.  The great weight of the evidence supports the jury's award.**

Next, Acer asks for a new trial premised on its view that the jury's damages award is higher than any lump sum damages number presented by an expert at trial. New Trial Br. 5–7. But Acer's premise is incorrect. Dr. Ugone, Acer's expert, testified that damages should be a lump sum in the range of $188,000–$767,000. *Id.*  While SVV's expert, Dr. Farber, testified that he believed damages should be awarded as a running royalty, he also testified that if the jury agrees with Acer that damages should be a lump sum, then damages should be $15.3 million. *Id.* at 3; Tr. 388:12–

390:23, 394:21–395:14; PTX-103.  In other words, the parties' damages experts presented lump

sum opinions in the range of $188,000–$767,000 (Dr. Ugone) to $15.3 million (Dr. Farber). The

verdict form is clear that the jury sided with Acer and awarded damages as a lump sum, and the

jury selected an amount—$10.3 million—precisely within the range proposed by the competing

experts.  Indeed, "the jury is not bound to accept a rate proffered by one party's expert but rather

may choose an intermediate royalty rate." *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d

1368, 1378 (Fed. Cir. 2005).  Accordingly, because the jury's verdict is not against the great weight

of the evidence, Acer's motion should be denied.

Tacitly acknowledging that the jury's verdict is rooted in the ranges and models presented

by the experts, Acer resorts to wordplay: according to Acer Dr. Farber presented a "lump sum,"

but not an "*actual* lump-sum amount."  New Trial Br. 5, 6 (emphasis added).  Acer argues without

authority that Dr. Farber's alternative lump sum opinion wasn't *really* a lump sum opinion because

it involved projections of future sales—therefore it "was really a per-unit running royalty."  *Id.* at

3.  This argument has been shot-through time and again.[2]

Finally, Acer relies on a single case, *Lucent Techs. v. Gateway*, 580 F.3d 1301 (Fed. Cir.

2009), to argue that there is no substantial evidence to support a jury verdict in this case using Dr.

Farber's alternative lump sum because he did not present future usage projections that were

---

[2] *See, e.g.*, *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-cv-00011-RSP, 2018
WL 3089701, at *7 (E.D. Tex. Mar. 7, 2018) ("[A] lump sum royalty includes compensation for
projected future infringement . . . The lump sum may be based on developments that have occurred
after the date of the hypothetical negotiation, including realistic projections of future sales.");
*Acceleration Bay LLC v. Activision Blizzard, Inc.*, 324 F. Supp. 3d 470, 490–91 (D. Del. 2018)
(allowing damages expert to testify to a lump sum that includes future sales projections); *Via Vadis,
LLC v. Blizzard Entm't, Inc.*, No. 1:14-cv-00810-LY, 2021 WL 5908599, at *4 (W.D. Tex. Dec.
14, 2021) (same, and also rejecting the argument that the lump sum projections must be calculated
using sales projections contemporaneous to the hypothetical negotiation); *Netlist, Inc. v. Micron
Tech., Inc.*, No. 2:22-CV-203-JRG-RSP, 2024 WL 326563, at *3 (E.D. Tex. Jan. 27, 2024) ("Lump
sum royalties, however, can include projected future sales.").

contemporaneous to the hypothetical negotiation, but rather presented his own future usage projections based on current sales data. Dkt. 185 at 4-6. Acer argues that *Lucent* requires that any evidence of future expected usage must be made "at the time of the "hypothetical" negotiation. *Id*. The Court has already specifically rejected the argument that *Lucent* always requires a contemporaneous use forecast, finding instead that *Lucent* merely held that there was a lack of substantial evidence *in that case* regarding future usage. *Via Vadis*, 2021 WL 5908599, at *4. The reason there was not substantial evidence to support a lump sum including future usage estimations in *Lucent* is that the asserted patent in *Lucent* was a method patent for which the plaintiff had "little, if any, direct evidence of infringement," and had nothing but a "lump-sum speculation theory" as to future usage—not projections. 580 F.3d at 1317, 1327.

Finally, Acer relies on a single case, *Lucent*, 580 F.3d 1301, to argue that there is no substantial evidence to support a jury verdict in this case using Dr. Farber's alternative lump sum because he did not present evidence regarding Acer's future use. New Trial Br. 6–7. But Dr. Farber's projects were based on evidence—current sales data. *Compare* Tr. 388:21–390:22 (describing projected calculation) and PTX-103 *with Lucent*, 580 F.3d at 1327 (expert "told the jury to 'speculate' as to what they expect the future to be like" in calculating lump sum). And Acer repeatedly reaffirmed at trial that it planned to make no changes to avoid infringement. *See, e.g.*, Tr. 469:3–10; 469:8–10; 328:5–13. Dr. Farber's sales projections and lump sum calculations are nothing like the speculation offered in *Lucent*; the jury's verdict is supported by the great weight of the evidence, and Acer's motion should be denied.

## II.    THE COURT SHOULD NOT GRANT A NEW TRIAL ON INVALIDITY.

Next, Acer requests a new trial on patent validity, urging that the verdict is against the great weight of the evidence because Acer's expert, Dr. Coleman, provided testimony that Acer views as "unrebutted." New Trial Br. 7–10. For starters, as detailed below, Acer's evidence was not

"unrebutted." But even putting that aside, Acer equates the commonplace decision to forego a rebuttal case with *a lack of evidence* supporting the jury's rejection of Acer's invalidity claims. Acer presenting its expert's opinion on invalidity does not shift the burden to SVV to adduce evidence of validity. A party *without* the burden of proof on a claim does not need to present evidence on that claim *at all* yet can still prevail. *See Magēmā Tech. LLC v. Phillips 66*, No. H-20-2444, 2023 WL 8283180, at *19 (S.D. Tex. Nov. 30, 2023). As the party *defending against* the claims of invalidity, SVV need not present *any evidence* to defeat those claims. SVV's patents are presumed valid, 35 U.S.C. § 282, and Acer must meet the exacting clear and convincing evidence standard to prove invalidity. *See, e.g.*, *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363–64 (Fed. Cir. 2018) (invalidity not "unrebutted" when subject to cross-examination and the jury is "entitled to evaluate" expert "testimony and determine whether [Acer] clearly and convincingly established" invalidity); *Finesse Wireless LLC v. AT&T Mobility LLC*, No. 2:21-cv-00317, 2023 WL 5613172, at *2 (E.D. Tex. Aug. 20, 2023).

**A. The jury's finding of no invalidity is not against the great weight of evidence.**

Central to Acer's Motion is its claim that the expert testimony of Dr. Coleman (Acer's technical expert) was "unrebutted." That is incorrect.

Most notably, the record evidence demonstrates that the Kunimochi 2 ("K2") reference, used in *every* invalidity ground presented by Acer at trial, does not disclose the lenses required by asserted claims from every patent. *See* PTX-006 ('397 Patent, Claim 9: "a plurality of light collectors"); PTX-008 ('191 Patent, Claim 10 via Claim 1: "a plurality of rounded ridges . . . wherein at least one of the rounded ridges defines a cylindrical lens"); PTX-009 ('135 Patent, Claim 16 via Claim 1: "a lenticular array of linear cylindrical lenses"); PTX-010 ('205 Patent, Claim 17 via Claim 1: "a planar array of lenses"). For each of these lens elements, Dr. Coleman relied on the disclosed "arc prisms" of K2. *See* Tr. 603:3–604:10 ('135 Patent); 641:23–642:15

('397 Patent); 666:17–668:6 ('191 Patent)[3]; 706:16–708:1 ('205 Patent).   However, the "arc prisms" of K2 are structures meant to diffuse light, DTX-017 (K2 at 6:17–21), with K2 stating that light reaching the arc prism faces "can be scattered randomly . . . ."  *Id.* (K2) at 8:66–9:5; *see also* Tr. 791:10–23 (discussing this disclosure on cross examination).   Prisms that scatter or diffuse light are not the same as lenses that focus or collimate light.  Dr. Coleman conceded as much on cross examination.  *See* Tr. 791:5–9 ("Q: Sir, diffusing light is not the same as focusing light, correct? A: Correct. Q: Lenses and prisms are not the same? A: Correct.   In general, there's differences.").   By securing key admissions on this point, SVV highlighted a lack of invalidity evidence for *all* patents-in-suit.  Acer's motion ignores when it incorrectly states that SVV "asked not a single question . . . as to the '205 and the '397 patents."  New Trial Br. 10.

The trial evidence also shows that the K2 reference used the term "lens" when discussing *other features* of K2's described backlight unit.  DTX-017 (K2 at Fig. 9, 12:47–53) (describing the use of a "semi-cylindrical lens" with individual LEDs).   But it disclosed different light scattering "arc prisms" in connection with the embodiments that Acer alleged invalidated SVV's patents.  Dr. Coleman was ignoring the K2 reference *as a whole.  See In re Enhanced Sec. Rsch., LLC*, 739 F.3d 1347, 1355 (Fed. Cir. 2014) (Courts may not "stitch together an obviousness finding from discrete portions of prior art references without considering the references as a whole.").   Both the inventor of the asserted patents and SVV's technical expert confirmed the novelty of the patented lensing structures compared to prior art structures.  *See* Tr. 73:22–74:7, 75:8–18, 79:21–80:22, 122:4–6, 280:12–15.  This evidence, alongside Dr. Coleman's own admissions, showed that

---

[3] Despite claiming in passing that the Coe-Sullivan reference also discloses lenses, Tr. 666:17–667:5, Dr. Coleman only testified regarding the "arc prisms" disclosure of K2, *id.* 667:6–668:6.  Acer provided no evidence of record that Coe-Sullivan discloses the claimed "plurality of rounded ridges" required by the '191 Patent. *See also* Tr. 662:13–20.

Acer's keystone prior art reference failed to disclose the lens structures of all patents-in-suit.

Besides failing to show that any prior art grounds disclosed the required lenses, Acer also failed to show that any prior art disclosed the claimed "optical windows" of the '397 Patent. *See* PTX-006 ('397 Patent Claims 9 and 14 via Claim 1, "said corrugated surface including highly transparent optical windows"). Dr. Coleman did not identify to any description of "optical windows" in the prior art combination Kobayashi or K2 references. Instead, to attempt to backfill this invalidity ground, Dr. Coleman re-cast SVV's infringement theory as applying to something broader: that "any preexisting prism sheet . . . would satisfy the optical window requirement of the claim[.]" *See* Tr. 637:15–639:21. This framing is unsupported in the record. It is directly contrary to Mr. Credelle's preceding testimony. Tr. 234:1–17, 235:17–236:4. And it is contrary to the record, which only accusing some of Acer's products of infringing '397 Patent, the unaccused products including monitors with standard prism sheets and films. *See* PTX-401 (listing 32 Acer products not accused of infringing the '397 Patent); PTX-300 at 27 (films of Acer KA242& bi product); PTX-309 at 8 (films of Acer R251 bid product). The identified disclosures of K2 and Kobayashi—admittedly only disclosing basic prism sheets—do not disclose the '397 Patent's claimed optical windows.

The evidence also demonstrates that Acer failed to show that K2 anticipates Claim 16 of the '135 Patent by failing to demonstrate that K2 discloses each and every claim element. Dr. Coleman was forced to claim that multiple elements were *inherently* disclosed, yet when pressed, himself admitted on cross examination that elements such as the dimensions of the claimed waveguide were not necessarily implied by K2's disclosures. Tr. 797:1–13. This examination

was not contrary to law, as Acer suggests.[4]  *See also* ECF No. 143 (SVV's Motion for JMOL of No Invalidity as to Claim 16 of the '135 Patent).  Rather, this impeachment successfully highlighted two things: (1) that Acer had previously presented demonstrative slides that characterized the prior art as disclosing claim language that was not in fact disclosed; and (2) that Dr. Coleman habitually filled in the disclosures of his anticipatory reference without understanding the rigor that inherency requires.  *See* Tr. 599:8–11 (concluding without evidence that "all light guide plates are flexible"); 600:11–16 (concluding without evidence that "all of the plates during this time period would meet these dimensions"); 602:10–18 (concluding without evidence that "all the LEDs emit diverging light"); 607:14–21 (concluding without evidence that "[a]ll light guides work this way where you have the extraction features separated by the rest of the backlight"); *see also* Tr. 795:3–13.  These examples demonstrate evidence supporting the validity of every asserted claim and that the jury's verdict of no invalidity is not against the great weight of the evidence.

**B.  In this case, the jury clearly did not consider Dr. Coleman's testimony credible.**

In presenting the "great weight" of evidence allegedly in its favor, Acer points *solely* to the testimony of Dr. Coleman.  New Trial Br. 7 n.3.  "The trier of fact, however, is not bound by expert testimony and is entitled to weigh the credibility of all witnesses, expert or lay."  *Caboni v. General Motors Corp.*, 398 F.3d 357, 361 (5th Cir. 2005) (citation omitted).  Indeed, the jury may have simply found Dr. Coleman not credible.  *See Fractus, S.A. v. Samsung Elecs. Co.*, 876 F. Supp. 2d 802, 826 (E.D. Tex. 2012).  And, "[b]ecause a jury is entitled to 'believe all, any part of, or none

---

[4] Acer's new trial motion on invalidity is based on the weight of the evidence; not any alleged prejudicial error.  However, Acer spends much of its ~3 pages of briefing making unsupported accusations against SVV, New Trial Br. 8–10, yet *none* of those alleged errors even form the basis of Acer's new trial request—they are a distraction.  To be sure, Acer did not move for mistrial on any of these alleged (non-)issues, and redirected its witness on many of the points that it now mentions in its motion.  *See* Tr. 811:21–813:9 (redirect on Kobayashi reference); 817:14–25 (redirect on opening demonstratives).  These arguments do not warrant a new trial.

of a witness' testimony,' there is always a 'reasonable basis' for a verdict against the party with the burden of proof." *Citro-Rey S. de R.L. de C.V. v. L&M Companies, Inc.*, No. CV M-07-154, 2009 WL 10692862, at *6 (S.D. Tex. Oct. 13, 2009) (quoting *Globe Indem. Co. v. Richerson*, 315 F.2d 3, 6 (5th Cir. 1963)). Not only does the jury's finding of no invalidity suggest that the jury found Dr. Coleman lacked credibility, the infringement verdict does, too. Dr. Coleman presented opinions on both issues, and the jury rejected them both.

Indeed, the jury had many reasons to conclude that Dr. Coleman was not credible. For example, he was not prepared. He struggled to answer basic questions about the patents without the assistance of demonstrative aids, Tr. 621:6–24, he could not keep his four alleged prior art references straight, *id.* 667:6–24, 668:16–669:7, and he did not even know the evidentiary standard for invalidity, Tr. 784:11–785:21. His testimony also contradicted itself at times. For instance, despite testifying that the inventions of each patent are not related to nor "make sense" for monitor backlight applications, Tr. 578:18–579:4, 623:4–25, 649:2–8, 651:1–10, 685:7–21, he also testified that those same inventions were supposedly disclosed and described in monitor backlighting prior art. He made numerous unsupported statements that backlighting technology had not changed for decades. *See, e.g.*, Tr. 568:21–569:1, 575:4–21, 620:11–14, 714:5–8, 725:8–25, 728:17–19, 730:16–24, 734:20–24. Yet Dr. Coleman has obtained over 60 patents on backlight technology over the years (all of which are valid, according to him). *See* Tr. 557:1–10, 783:5–12. He used unhelpful, technically unsound demonstratives. *See* Tr. 778:23–779:17. He was evasive, with the Court instructing Dr. Coleman numerous times to be responsive to questions on cross examination. *See* Tr. 766:25, 769:1–5, 774:8–9, 801:2, 802:7; *see also* Tr. 763:10–18.

The jury had the opportunity at trial to weigh the credibility of Dr. Coleman's testimony, both for infringement and invalidity. It found Dr. Coleman was not credible. This Court has stated

previously that "it is not this Court's place to assume the jury has not already weighted the credibility of the testimony before it." *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-CV-00044-ADA , 2021 WL 3742201, at \*4 n.1 (W.D. Tex. Aug. 24, 2021).  The Court should decline Acer's invitation to reassess the jury's weighing of Dr. Coleman's credibility and deny Acer's motion for new trial on invalidity.  *See, e.g.*, *Cloudofchange*, No. W-19-CV-00513-ADA, 2022 WL 15527756, at \*2 (new trial inappropriate unless movant shows "an absolute absence of evidence to support the jury's verdict"); *Finesse Wireless*, 2023 WL 5613172, at \*2 (declining "to usurp the role of the jury to weigh a witness's credibility" when "the verdict indicates that [AT&T's technical expert] was not a credible witness in the jury's mind").

## III.   THE JURY'S WILLFULNESS FINDING IS SUPPORTED BY AMPLE EVIDENCE AND DOES NOT WARRANT A NEW TRIAL.

Acer's new-trial arguments for willfulness are largely the same as its arguments on JMOL.  *Compare* JMOL Br. 6–8 *with* New Trial Br. 10–12.  As recounted in response to the JMOL, the jury's verdict of willfulness is well-supported.

"Section 284 allows district courts to punish the full range of culpable behavior."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 106 (2016).  That includes recklessness and willful blindness.  The Supreme Court has explained that "where willfulness is a statutory condition of civil liability, [it has] generally taken it to cover not only knowing violations of a standard, but reckless ones as well."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–58 (2007) (collecting cases); *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128–29 (1985) (inclusion of "reckless disregard" was "an acceptable way to articulate a definition of 'willful'").  As to willful blindness, the Supreme Court explained that "[a] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing" and is "*just as culpable* as those who have actual knowledge" of their misconduct.  *Glob.-Tech Appliances, Inc. v. SEB*

*S.A.*, 563 U.S. 754, 766 (emphasis added).  *See also* SVV's Resp. to JMOL at 5–6.

Acer suggests that there is no evidence that it chose to infringe before details were provided in the Complaint and that its "good-faith belief that it did not infringe and that the patents were invalid" immunizes its post-suit conduct from willfulness.[5]  New Trial Br. at 10–12.

But the jury's verdict is on firm footing.  Admitted into the trial record is SVV's letter to Acer—which not only lists out a series of patents that Acer's "display-containing devices (e.g., computer displays" infringe but also provided "by way of example only" the names of two specific models of Accused Products.  JTX-1.  The letter calls out two specific claims of the '397 patent.  *Id.*  SVV armed Acer with its patents and exemplary infringed products.  At that moment—upon receipt of JTX-1—Acer had all the information necessary for a technical person to do the same teardowns that SVV did.  ASUS was warned of its infringement but chose to do nothing.  Tr. 267:11–15 ("Q. My question is, as a technical person, you know, receiving a letter like this that Acer received, could a technical person do the teardowns that you did to determine whether there was infringement? A. Absolutely. It's very straightforward."); *id.* 315:18–20.  Acer had monitors to teardown and had design files it could have reviewed but chose not to.  *Id.* 468: 1–9.

When confronted at trial about Acer's decision to infringe, Acer did not point to a good-faith belief in invalidity or noninfringement: instead, it stated that it did not course correct because

---

[5] In an effort to divide and conquer, Acer creates a dichotomy between "pre-suit" and "post-suit" willfulness in its Motions.  Acer New Trial Br. 10–12.  The jury was not asked to decide willfulness on a pre- and post-suit basis, and neither the Supreme Court nor the Federal Circuit have sub-divided the willfulness question in this way to evaluate the sufficiency of willfulness evidence.  In any event, it is well established in this case that a Complaint provides the requisite notice of the patent and a defendant's infringement to support post-suit willfulness.  *E.g.*, *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 778 (W.D. Tex. 2022); *Atlas Glob. Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*, 661 F. Supp. 3d 643, 654 (W.D. Tex. 2023).  And all pre-suit evidence should equally apply to post-suit behavior, as willfulness is a totality of the circumstances inquiry.  *Shiley, Inc. v. Bentley Lab'ys, Inc.*, 794 F.2d 1561, 1568 (Fed. Cir. 1986)

the decision regarding infringement was not yet "final." *Id.* 469:3–10 ("Q. Ma'am, it's been years of litigation. It's been three, three and a half years since you got our letter, and you haven't done a single thing to change your products, correct, ma'am? A. No, we don't. Q. You haven't done a single thing to stop infringing? A. Because whether it's for infringe or not, it's not the final. Yeah, so that's my answer."). Acer deliberately infringed as it waited for the results of this case.

The jury also heard testimony from Acer's own corporate representative that Acer exists to "make money," *id.* 454:10–11. From that testimony, coupled with the evidence showing that use of SVV's technology unlocked significant cost savings for Acer, *e.g.*, *id.* 373:12–25, the jury could infer that Acer was motivated to and chose to infringe to maximize profits. The jury could have easily relied upon this evidence to find that Acer infringed deliberately or intentionally—either through subjective recklessness or willful blindness. *See Global-Tech*, 563 U.S. at 766, 769.

Willfulness is focused on *Acer's* state of mind and culpable, deliberate, and intentional acts. At trial—as now—Acer attempted to criticize SVV's decision to wait until the suit was on file to provide the charts. Tr. 154:3–14; New Trial Br. 10. To be clear, SVV *did* provide claim charts. But those charts did not make a difference. Tr. 105:21–23; 106:21–24; 469:3–10; *id.* 469:14–470:9 (agreeing that Mr. Marc Ho, the head of the division for the Accused Products, did not investigate changes that could be made to avoid infringement); *id.* 328:5–13 (Mr. Ho stating that Acer "did not conduct any" "investigations" into noninfringing alternatives). Acer proceeded recklessly and chose to willfully blind itself to its infringement.

Acer now also argues that it was entitled to rely on its belief that it did not infringe and that the patents were invalid.[6] But that is not the state of mind Acer confessed at trial: Acer's corporate

---

[6] Acer relies entirely on one case for support: *Provisur Techs., Inc. v. Weber, Inc.*, 119 F.4th 948, 955 (Fed. Cir. 2024). That case is inapposite. There, the relevant evidence was only testimony about how the defendant generally "tracked patents" in the technology space and had assigned a

representative testified that Acer has not done a thing to stop infringing because the determination as to whether Acer "infringe[s] or not" is "not . . . final." *Id.* 469:8–10. Acer did not have a good faith belief in invalidity; it did not make changes because infringement was not "final." Acer certainly was not relying on its litigation defenses from its experts that it now cites in its brief. *Compare id.* with New Trial Br. 11 (citing Tr. 551–750, 811–24 (examination of Dr. Coleman)). *Halo* warned of the precise argument Acer is making here: Willful infringers avoiding comeuppance based on after-the-fact justification by attorneys. *Halo*, 579 U.S. at 105.

Acer's attorneys' "ingenuity" cannot be credited here where Acer has pointed to *no evidence* that it actually relied upon its litigation defenses. *See KAIST IP US LLC v. Samsung Elecs. Co.*, 439 F. Supp. 3d 860, 885 (E.D. Tex. 2020). Acer's corporate representative did not state that Acer relied those defenses in forming a good-faith belief against liability. In fact, on at least two instances, she (and thus, Acer) took positions that were *directly contrary* to Acer's litigation strategy. *Compare* Tr. 984:21–985:10 (characterizing Dr. Vasylyev's inventions as "solar" and arguing that "one of the major themes of this case" is that Dr. Vasylyev did not create monitor components) *with id.* 476:2–7 (Ms. Shang stating that she "believe[s] the patent definitely would apply to certain products of monitors"); *compare id.* 446:18–19 ("Q. So Acer Inc. controls Acer America, correct? A. Correct.") *with id.* 498:1–25 (Ms. Shang agreeing that Acer's discovery response denying control over Acer America was Acer's "lawyers being lawyers"). On this record, the jury could have easily concluded that Acer did not rely on litigation defenses to form a belief in infringement and/or invalidity, and the verdict is not against the great weight of evidence.

---

"high score" to the asserted patents indicating that "the patent[s] w[ere] relevant for purposes of further evaluation." *Id.* That evidence failed to connect any of the Asserted Patents to specific products, but here, the claim charts expressly accused a class of products (computer displays) and provided examples. JTX-1. That is supplemented by the evidence discussed herein regarding willfulness. *Provisur* does not require more.

**IV.    THE JURY'S INFRINGEMENT VERDICT IS WELL-SUPPORTED AND THERE WAS NO PREJUDICIAL ERROR IN THE CHARGE**

As to infringement, Acer's arguments, too, largely mirrors those it offered in its Rule 50(b) motion, but the issues are taken in a different order and, here, Acer also challenges the charge.  As with the JMOL, Acer's current position is directly contrary to that it offered to the jury—that it was taking responsibility for the actions of Acer America.  Tr. 436:25–437:2; 437:3–7.  Acer itself collapsed the distinction between it and Acer America at trial, arguing in closing, for example, that Acer—not Acer America—"sells hundreds and hundreds of monitors."  Tr. 1011:21–23.  The Court should reject Acer's attempt to create this distinction anew on post-trial.  *See Montano v. Orange Cnty., Texas*, 842 F.3d 865, 882 (5th Cir. 2016) (remarks in closing are "binding admissions").  Nevertheless, the jury verdict is not against the great weight of the evidence.

**A.    The jury's infringement finding is not against the great weight of the evidence.**

There is ample record support for Acer's commission of direct infringement.  For example, Acer's corporate representative admitted that Acer offers monitor products for sale in the United States via Acer's website.  Tr. 462:17–19 ("Ma'am, Acer is offering to sell these products in the United States on its website, correct? A. Yes.").  While Ms. Shang quibbled with whether the products in this case are "currently" on offer on its website, *id.* 462:21–463:3, Mr. Credelle also offered testimony showing Acer offering an Accused Product for sale on its website, *id.* 261:18–262:4.  It does not contradict the "great weight of the evidence" for the jury to have relied upon Acer's own corporate witness's admission and expert testimony.

**B.    Acer is liable for Acer America's infringement.**

Next, Acer argues that the jury's liability finding is against the great weight of the evidence because there is *no* evidence of direction and control, agency, or alter ego.  New Trial Br. 13–14.  Acer is incorrect.

1. <u>The great weight of the evidence supports that Acer controlled Acer America and that Acer America is Acer's agent.</u>

**Control.**  First, there is considerable evidence that Acer controls Acer America.  For starters, Acer *agreed* that it controlled Acer America at trial.  Tr. 446:18–19 ("Q. So Acer Inc. controls Acer America, correct? A. Correct."); *see also* Tr. 446:20–447:3–5.  Apart from an actual admission, there is significant additional evidence showing that Acer controls Acer America.  *See, e.g.*, *id*.; *id.* at 436:25–437:2, 437:3–7, 434:2–6, 436:13–23; 450:14–24 (Acer America makes sales on Acer Inc.'s behalf); 449:6–17 (Acer America only sells Acer products); 451:4–452:12 (Acer America must follow Acer Inc.'s rules, and Acer controls product flow); 453:11–17.

Acer's contract with Acer America only highlights the level of control it has over Acer America.  Acer now claims that the Supply Agreement between Acer America and Acer Inc. "does not obligate Acer America to sell anything at all."  New Trial Br. 13.  Yet that is flatly contradicted by the text of the Agreement.  JTX-15 at 10 ████████████████████████████ ████████████████████████████████████████).  The Agreement not only obligates Acer America to infringe—it sets rules regarding that infringement.  ████████.  The jury was permitted to rely upon the Agreement find Acer liable for Acer America's infringement.

**Agency.**  Acer now contests that Acer America is its agent based on language in the Supply Agreement ███████████████████████████ New Trial Br. 13, despite never raising this argument to the jury.  But the jury could have credited other aspects of the contract, including its express statement that ██████████████████████████████ JTX-15.  The jury likewise could have credited facts from the trial record about the relationship between Acer and Acer America as evidence of Acer Inc.'s control, Acer America's acts on Acer's behalf, and Acer America's assent to Acer's control.  For example, Ms. Shang readily admitted that Acer Inc. controlled Acer America, that Acer America only sold Acer Inc. products, and that

Acer Inc. controlled Acer's infringement.  *E.g.*, Tr. 436:25–437:2, 437:3–7, 434:2–6, 436:13–23; 446:13–447:5; 450:14–24; 449:6–17; 451:4–452:12; 453:11–17; *see* JTX-15; *infra* § IV.B.2.C.[7]

> 2. <u>Acer's alter ego arguments cannot deliver it a new trial.</u>

As it did at JMOL, Acer asks the Court to adopt an incorrect statement of the law of alter ego and re-urges disputed factual issues at trial, hoping the Court will resolve the facts in its favor.

In the Fifth Circuit, a party seeking a new trial based on jury instructions first "must demonstrate that the charge as whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations."  *Hartsell v. Dr. Pepper Bottling Co. of Texas*, 207 F.3d 269, 272 (5th Cir. 2000) (quoting *Johnson v. Sawyer*, 120 F.3d 1307, 1315 (5th Cir. 1997)). "Second, even if the jury instructions were erroneous," reversal is unwarranted if, based on the entire record, "the challenged instruction could not have affected the outcome of the case."  *Id.*; *see also Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 505 (5th Cir. 2012).

> (a) *Any error in the charge could not have affected the outcome of the case.*

Acer now argues that the jury should have been instructed that the "control was used to commit fraud or injustice."  New Trial Br. 15.  As a preliminary matter, reversal is unwarranted based on jury instructions if "the challenged instruction could not have affected the outcome of the case."  *Hartsell*, 207 F.3d at 272.  Liability was established under a series of vicarious liability theories including contract, agency, direction and control, conditioned benefit, and profits-with-the-ability-to-stop-infringement—apart from alter ego.  *See* JMOL Resp.  Even if Acer were correct that there was a missing "fraud" element to the alter ego charge, the jury could have found

---

[7] The vicarious liability evidence also shows that Acer is also vicariously liable via contract, that it is liable because it controlled Acer America's infringement, could stop it, and profited from it, rendering it liable for vicarious infringement, *see Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015); and that Acer is liable because it conditioned receipt of a benefit—a supply of products—on Acer America infringing and established the manner and timing of infringing sales*, see id.* at 1023.

infringement under any of those rubrics—many of which bear a lower burden than alter ego.  Given Acer's non-opposition to other aspects of the charge, the alter ego charge could not have created prejudicial error.  The new trial motion on this basis should be denied.

(b) *Acer's proposed instruction is not a correct statement of law.*

On the merits, Acer's instruction itself is not a substantially correct statement of law.  Texas law applies to the alter ego question,[8] and the Fifth Circuit has interpreted the Texas Supreme Court's *Castleberry* opinion to set forth "three broad categories in which a court may pierce a corporate veil: (1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and (3) the corporation is used as a sham to perpetrate a fraud."  *W. Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 67–68 (5th Cir. 1994).  Alter ego is met "when a corporation is organized and operated as a mere tool or business conduit of another corporation."  *Id.* at 68.  Alter ego is "but one of several methods for piercing the corporate veil," *id.*, listed separately from piercing the corporate veil due to its use for "illegal purposes" or to perpetuate "a fraud."  Even a case Acer itself cites, *Gardemal*, 186 F.3d at 593, recognizes that alter ego does not require fraud.  *Id.* ("Under Texas law the alter ego doctrine allows the imposition of liability on a corporation for the acts of another corporation when the subject corporation is organized or operated as a mere tool or business conduit.").[9]  Because proof

---

[8] Acer's motion relies on Fifth Circuit and Texas law for alter ego.  *See* New Trial Br. 15.

[9] Acer other cases fare no better.  In *United States v. Bestfoods*, 524 U.S. 51, 62-63 (1998), for example, the Supreme Court recognized that "wrongful purposes"—apart from fraud—could support piercing the corporate veil.  For this proposition, *Bestfoods* relied upon *Chicago, M. & St. P.R. Co. v. Minneapolis Civic and Commerce Assn.*, 247 U.S. 490, 501 (1918) for its recognition that corporate separateness can be disregarded when a subsidiary is "used as a mere agency or instrumentality of the owning company."  In so doing, *Bestfoods* thus recognized that wrongful purposes could include using a subsidiary as a "mere agency or instrumentality," and did not impose a fraud requirement.  *Accord Bostic v. Daily Dot, LLC*, No. 1:22-CV-158-RP, 2023 WL 2317789, at *4 (W.D. Tex. Mar. 1, 2023) (characterizing alter ego as an "exceptional circumstance" allowing "courts to impose liability 'on a corporation for the acts of another corporation when the subject corporation is organized or operated as a mere tool or business

of fraud is not required to impose alter ego liability, Acer's proposed instruction is not a substantially correct statement of the law and fails to support Acer's new trial request.

(c) *The evidence supports the jury's alter ego finding.*

There is substantial evidence supporting the jury's finding that Acer America was organized and operated as a mere tool or business conduit of Acer. Acer Inc. owns 100% of Acer America. Tr. 441:7–16. Acer America and Acer Inc. share board members. *Id.* 448:15–21. In fact, the companies share Acer Inc.'s corporate representative as an employee. *Id.* 448:24–449:4. Acer also publishes an Annual Report, JTX-14, and it includes consolidated financial statements with its subsidiaries, which, under the International Financial Reporting Standards Acer generates its reports in conformity with, means that Acer and its subsidiaries are a single economic entity and that Acer controls, has power over, and receives returns from its subsidiaries. Tr. 443:15–24; 444:5–445:4; 447:3–5; 446:13–17; 445:24–446:2. Indeed, at trial, Acer agreed that it controls, has power over, gets financial returns and potentially losses from, and has the power to stop the infringement of Acer America. *Id.* 446:18–24; 446:25–447:2.

By all accounts, Acer America only exists to sell Acer Inc.'s products in the United States. *Id.* 479:23–25. Acer America is not able to do anything else. *Id.* 449:6–17; *id.* 326:25–327:5. The transaction flow from Acer Inc. to Acer America has no markup—more akin to an internal transaction than an arms-length sale to a third party. *Id.* 327:6–13; 336:7–21. Acer America is in fact *obligated* to sell products "on behalf of Acer Inc." *Id.* 450:22–24; *see also* JTX-15 at 10. In so doing, Acer America is obligated to follow Acer Inc.'s policies or rules and must reflect

conduit'" (quoting *Gardemal*, 186 F.3d at 593)). The only case Acer cites that remotely supports a fraud requirement is *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006). That case, however, relies on an earlier case, *Bridas I*, 345 F.3d 347, 359 (5th Cir. 2003), for its "fraud" requirement, and *Bridas I* takes that requirement from a Second Circuit case applying New York law. *See Bridas I*, 345 F.3d at 359.

favorably on Acer Inc.  Tr. 451:4–21.  Acer America is nothing more than a conduit for Acer Inc.'s desired U.S. sales—with no ability to control the flow of goods to it and no ability to control infringement.  *Id.* 451:22–452:12.  Indeed, Acer Inc. makes Acer America's decisions, *id.* 326:16–24, even with regard to patent infringement.  *Id.* 453:11–17.

In the face of this compelling evidence, Acer argues that Acer America "maintains separate property," "pays the salaries of its own employees," "has officers which are not in common with Acer," and "purchases products from Acer outside the United States, arranges for their shipment to the United States, handles importation and customs requirements, and resells them to consumers" "on its own with no involvement from Acer."  New Trial Br. 16.  But these facts, too, paint a picture of Acer Inc. using Acer America as a mere tool or business conduit to access the United States market, even if Acer America has a few ministerial functions incidental to its operations.  Acer cannot show that the verdict is against the great weight of the evidence.

**C.  The induced infringement verdict is not against the great weight of the evidence.**

Finally, Acer argues that there is insufficient evidence of Acer's specific intent to infringe to support the jury's inducement ruling.  Acer never made this argument to the jury; it did not move on JMOL on this issue; and the Court should consider it waived.  *Simon*, 891 F.2d at 1159.  Regardless, the jury's verdict is not against the great weight of the evidence.  The specific intent element of inducement was met by the evidence regarding willfulness, discussed *supra*, which includes evidence of recklessness and willful blindness.  The vicarious liability facts discussed above also show that Acer contracted with Acer America to have Acer America infringe through importation and sales and intended to use Acer America as mere conduit for its sales in the U.S. market.  The jury could easily (and did) infer that Acer was aware of the fact that its products infringed SVV's patents, acted recklessly or willfully blinded itself to that fact, and that Acer encouraged or controlled its subsidiary to infringe.  Acer's motion should be denied in its entirety.

DATED: November 19, 2024                    Respectfully submitted,

*/s/ Warren J. McCarty, III*
Bradley W. Caldwell
Texas Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Warren J. McCarty, III
Texas Bar No. 24107857
Email: wmccarty@caldwellcc.com
Robert Seth Reich, Jr.
Texas Bar No. 24088283
Email: sreich@caldwellcc.com
Daniel R. Pearson
Texas Bar No. 24070398
Email: dpearson@caldwellcc.com
John F. Summers
Texas Bar No. 24079417
Email: jsummers@caldwellcc.com
Aisha M. Haley *(admitted pro hac vice)*
Texas Bar No. 24139895
Bjorn A. Blomquist
Texas Bar No. 24125125
Email: bblomquist@caldwellcc.com
**CALDWELL CASSADY & CURRY P.C.**
2121 N Pearl Street, Suite 1200
Dallas, Texas 75201
Telephone:  (214) 888-4848
Facsimile:   (214) 888-4849

Robert D. Katz
Texas Bar No. 24057936
Email: rkatz@katzfirm.com
**KATZ PLLC**
6060 N. Central Expressway, Suite 560
Dallas, Texas 75206
Telephone:  (214) 865-8000
Facsimile:   (888) 231-5775

**ATTORNEYS FOR PLAINTIFF SVV
TECHNOLOGY INNOVATIONS INC.**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 19, 2024, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system and by email. Administrative Policies and Procedures for Electronic Filing in Civil and Criminal Cases, Western District of Texas, Section 14.

*/s/Warren J. McCarty, III*
Warren J. McCarty, III